IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL T. MAK, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-24-248-SLP |
| THEODORE R. DUNHAM JR. and | ) |
| John Does 1-10, | ) |
| Defendants. | ) |

**O R D E R**

Before the Court is Defendant Theodore R. Dunham's Motion to Dismiss [Doc. No. 9]. Plaintiff Paul T. Mak has responded [Doc. No. 20], and Mr. Dunham has replied [Doc. No. 23]. For the reasons that follow, the Motion is GRANTED IN PART and DENIED IN PART.

**I.   Introduction**[1]

Mr. Mak brings this action for financial loss associated with an investment in an online cryptocurrency marketplace called "DePo" which was financed through investments in cryptocurrency tokens. *See generally* Compl. [Doc. No. 1]. Mr. Mak attaches a "prospectus" for DePo that he alleges Mr. Dunham and various John Doe Defendants distributed. *Id.* ¶ 8; *see also* [Doc. No. 1-1].[2] Mr. Dunham was listed as the CEO of DePo

---

[1] The Court accepts all well pleaded factual allegations in the Complaint as true and views them in the light most favorable to Mr. Mak as the nonmoving party. *See Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1102 (10th Cir. 2019).

[2] The Court may consider the documents attached to the Complaint as exhibits without converting the Motion to Dismiss into a summary judgment motion. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

and was described in a separate whitepaper for DePo as an individual with a wealth of experience in "both traditional and decentralized finance" and "award-winning blockchain projects." *Id.* ¶¶ 11-12.

The prospectus pitched DePo as an online platform that could be used to "trade, store, and manage an entire portfolio of digital assets across multiple platforms and multiple markets, all from a decentralized interface." *Id.* ¶ 9. The initial financing strategy for DePo was to issue new a cryptocurrency branded as "$DEPO" tokens. *Id.* ¶ 13. In particular, a portion of $DEPO tokens were to be provided to a group of initial investors, who could later recover their investment by exchanging $DEPO tokens for another asset such as money. *Id.* The financing strategy further contemplated that members of the public would be able to trade $DEPO tokens on various cryptocurrency markets and exchanges.

Mr. Mak received the DePo prospectus in May of 2021 through nonparty Robert Weir, a broker for similar transactions Mr. Mak had previously participated in. *Id.* ¶ 14. Based on the DePo prospectus, Mr. Mak decided to get involved and provided multiple capital contributions and invoice payments that totaled in excess of $150,000. *Id.* ¶¶ 14-15. On October 8, 2021, Mr. Dunham issued $DEPO tokens to a cryptocurrency wallet controlled by Mr. Weir for distribution to the initial investors such as Mr. Mak. *Id.* ¶ 16.

Mr. Weir transferred Mr. Mak his share of $DEPO tokens on November 17, 2021. *Id.* ¶ 17. By that point, the $DEPO tokens had increased in value significantly, and Mr. Mak's investment was worth over $2,057,890.87. *Id.* On January 15, 2022, Mr. Mak's investment reached a value of $14,227,101.20. *Id.* But by March 7, 2022, the value of Mr. Mak's investment in DePo was $2,105,176.55. *Id.*

On or about March 8, 2022, Mr. Dunham announced a rebranding of the DePO venture as the "ARC" venture. *Id.* ¶ 18. In connection with the rebranding, Mr. Dunham executed what he referred to as a "token swap," where $DEPO tokens would be exchanged on a 1:1 basis for a new cryptocurrency branded as "$ARC" tokens. *Id.* ¶ 19. Mr. Mak attaches a copy of the March 8 rebranding announcement to his Complaint. *See* [Doc. No. 1-3]. It stated that there would be "no other change to our tokenomics, contract contents, or any other aspect of the token." *Id.*; *see also* Compl. [Doc. No. 1] ¶ 20.

On March 9, 2022, Mr. Dunham and the John Doe Defendants posted a new one page letter that Mr. Mak claims to show a "secret and ulterior motive for the rebrand that was not previously disclosed to the public[.]". *Id.* ¶ 21. The letter stated: "[a] plan was formed to swiftly cut off any avenue of access that the external parties could possibly have to the project. Thankfully, due to the long hours of planning put in by the project team, the bad actors were taken by surprise and the relaunch was successful." *Id.*

The capital Mr. Mak contributed to the DePo project was transferred to the rebranded ARC project, but Mr. Dunham did not swap any of the $DEPO tokens in Mr. Mak's wallet for $ARC tokens. *Id.* ¶¶ 22-23. Mr. Mak first learned of the rebrand update letter the next day; March 10, 2022. *Id.* ¶ 25. He discovered that his $DEPO tokens had not been exchanged for $ARC tokens shortly thereafter. *Id.* ¶ 25. After Mr. Dunham executed the token swap, the market for Mr. Mak's $DEPO tokens was eliminated. *Id.* ¶ 26. Mr. Mak was then unable to recover his initial investment or trade the $DEPO tokens for another assets such as money to recover his capital contributions. *Id.*

Mr. Mak asserts state law claims for breach of a joint venture agreement, breach of fiduciary duty, unjust enrichment, and violation of the Oklahoma Consumer Protection Act (OCPA), 15 Okla. Stat. §§ 752-53.  Compl. [Doc. No. 1] at 6-10.[3]  Mr. Dunham moves to dismiss all three claims.

## II.   Governing Standard

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  While the complaint need not contain "detailed factual allegations," it must include "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to avoid dismissal.  *Twombly*, 550 U.S. at 555.  The Court accepts all well-pleaded allegations as true, views those allegations in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

## III.   Discussion

Mr. Dunham argues that the Complaint fails to state a claim for violation of a joint venture agreement and therefore Mr. Mak's claim for breach of fiduciary duty also fails.

---

[3] The Court's subject matter jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332.  *See id.* ¶ 6.

4

*See* Mot. [Doc. No. 9] at 3-8. Mr. Dunham then asserts that Mr. Mak has not stated a claim for unjust enrichment or violation of the OCPA. *See id.* at 8-11. Mr. Mak similarly addresses breach of joint venture agreement and breach of fiduciary duty in tandem, *see* Resp. [Doc. No. 20] at 3-7, so the Court addresses those claims together before discussion of unjust enrichment and the OCPA.

### A. Joint Venture Agreement and Breach of Fiduciary Duty

Under Oklahoma law, a joint venture is "a special combination of two or more persons where in some specific venture a profit is jointly sought without any partnership or corporate designation." *LeFlore v. Reflections of Tulsa, Inc.*, 708 P.2d 1068, 1072 (Okla. 1985); *Martin v. Chapel, Wilkinson, Riggs, and Abney*, 637 P.2d 81, 85 (Okla. 1981) ("A joint venture is generally a relationship analogous to, but not identical with, a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit."). Three elements must be established: "1) A joint interest in property (the contributions need not be equal or of the same character), 2) An express or implied agreement to share profits and losses of the venture, 3) Action or conduct showing cooperation in the venture." *McGee v. Alexander*, 37 P.3d 800, 806 (Okla. 2001) (quoting *LeFlore*, 708 P.2d at 1072). "The law requires little formality in the creation of a joint venture and the agreement is not invalid because it may be indefinite with respect to its details." *Martin*, 637 P.2d at 86.

The Court finds that the facts alleged do not support the existence of a joint venture agreement between Messrs. Mak and Dunham.[4] As relevant to the second element, there are no factual allegations supporting the conclusion that Mr. Dunham intended to establish a joint venture with Mr. Mak. *See Martin*, 637 P.2d at 86 ("The essential test in determining the existence of a joint venture is whether the parties intended to establish such a relation."). There are no allegations that suggest Mr. Dunham knew who Mr. Mak was—let alone any communications between the two, even through third parties, that would suggest intent to form a joint venture agreement. *See generally* Compl. [Doc. No. 1].[5]

As such, Mr. Mak's allegations are unlike the facts of the cases he cites where, at a minimum, both parties knew of one another. *See, e.g., Brown v. Thompson*, 413 P.3d 900, 904 (Okla. Civ. App. 2017) (finding existence of a joint venture agreement where there was evidence that the parties "agreed to pool their resources to purchase properties for future income"); *see also Brown v. Kruger Fam. Holdings II, LLC*, No. 19-CV-00048-GKF-JFJ, 2019 WL 4061677, at *1, 3-4 (N.D. Okla. Aug. 28, 2019) (finding a joint venture agreement where the parties had a preexisting business relationship and "negotiated a Memorandum of Agreement" for a business investment in the plastics industry).

---

[4] The Court notes, as an initial matter, that Mr. Mak's claim for breach of a joint venture agreement includes only collective allegations regarding "Defendants" rather than actions by Mr. Dunham in particular. *See* Compl. [Doc. No. 1] ¶¶ 37-45.

[5] As summarized above, the parties' actions were facilitated through a broker. *See* Compl. [Doc. No. 1] ¶¶ 14-17. While Mr. Mak likely knew of Mr. Dunham via the whitepaper and prospectus, there are no facts alleged that suggest Mr. Dunham knew who Mr. Mak was. *See generally id.* Moreover, although not dispositive, the fact that the whitepaper specifically states that it "does not imply any element of a contractual relationship" only further suggests the parties did not intend to enter into a joint venture. *See* [Doc. No. 1-2] at 2.

Moreover, there are no facts alleged regarding an agreement between Messrs. Mak and Dunham to share in profits and losses. *See generally* Compl. [Doc. No. 1]; *see also Le v. Total Quality Logistics, LLC*, 431 P.3d 366, 378 (Okla. Civ. App. 2018) ("A profit jointly sought in a single transaction by parties is the chief characteristic of a joint venture." (citing *Commercial Lumber Co. v. Nelson*, 72 P.2d 829 (Okla. 1937)). Although a joint venture agreement "may be inferred from the conduct of the parties in relation to themselves and to third parties," *see Martin*, 637 P.2d at 86, there are no factual allegations whatsoever regarding Mr. Dunham's interest in the profits or losses of DePo. *See generally* Compl. [Doc. No. 1].

Mr. Mak argues that Mr. Dunham's status as CEO of DePo necessarily means he had an interest in the "overall success" of DePo and in the value of $DEPO tokens. *See* Resp. [Doc. No. 20] at 4-5. But this is an assumption not spelled out in the Complaint: Mr. Mak does not allege Mr. Dunham held any $DEPO tokens or other kind of equity interest in DePo. *See* [Doc. No. 1]. At best, Mr. Dunham's status as CEO suggests he had a general "interest" in the success of DePo to keep his position, but even that falls short of supporting the conclusion that he held a *joint* interest in profits with Mr. Mak. *See Le*, 431 P.3d at 378-80 ("The profit accruing, however, must *be joint and not several*, otherwise every person, firm, or individual who performed work or labor in connection with a project might be termed joint adventurers, whether they had any such intention or not.").

7

For all these reasons, the Court finds that Mr. Mak has failed to state a plausible claim for breach of a joint venture agreement.[6]  Because Mr. Mak's claim for breach of fiduciary duty is solely premised on an alleged joint venture agreement, *see* Compl. [Doc. No. 1] ¶ 29, that claim necessarily fails too.  *See* Mot. [Doc. No. 9] at 8; *see also* Resp. [Doc. No. 20] at 7.  Accordingly, Mr. Dunham's Motion is granted with respect to these two claims.

### B.  Unjust Enrichment

Under Oklahoma law, "[u]njust enrichment is a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable, i.e., the party has money in its hands that, in equity and good conscience, it should not be allowed to retain."  *Okla. Dep't of Secs. ex rel. Faught v. Blair*, 231 P.3d 645, 658 (Okla. 2010).  The Supreme Court of Oklahoma has described the elements of unjust enrichment as "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another."  *Id.*  There must be "enrichment to another, coupled with a resulting injustice."  *City of Tulsa v. Bank of Oklahoma, N.A.*, 280 P.3d 314, 319 (Okla. 2011) (internal quotation marks and citation omitted).

---

[6] Mr. Mak finally asserts the existence of a joint venture is a fact question that should be decided by a jury.  *See* Resp. [Doc. No. 20] at 7.  But the cases he cites involved questions of fact on summary judgment, not whether there were sufficient allegations to state a claim in the first place.  *See id.*

Mr. Dunham devotes very little attention to unjust enrichment in his Motion. *See* [Doc. No. 9] at 8-9.[7] His only contention is that Mr. Mak was warned via the DePo whitepaper that $DEPO tokens could fail, and losses associated with a failed investment in a new business venture "do[] not, and cannot form the basis of an unjust enrichment claim." *Id.* at 9. Mr. Dunham cites no relevant legal authority, and his argument ignores the allegations that comprise Mr. Mak's unjust enrichment claim. *See id.*

Mr. Mak's unjust enrichment claim is premised on Mr. Dunham's use of his capital contribution to DePo in the $ARC project without swapping his $DEPO tokens for $ARC tokens. *See* Resp. [Doc. No. 20] at 8; *see also* Compl. [Doc. No. 1] ¶¶ 46-49. In moving Mr. Mak's capital contribution to DePo over to $ARC without giving Mr. Mak a converted share of $ARC tokens, Mr. Dunham has retained the benefit of Mr. Mak's capital contribution at Mr. Mak's expense because he has no way to recover that contribution. *See id.* That is sufficient to state a plausible claim for unjust enrichment at this juncture.

### C. Violation of the OCPA

A claim under the OCPA generally involves four elements: (1) the defendant engaged in an unlawful practice as defined in 15 Okla. Stat. § 753; (2) the challenged practice occurred in the course of the defendant's business; (3) the plaintiff, as a consumer, suffered an injury in fact; and (4) the challenged practice caused plaintiff's injury. *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000). An "unlawful practice" under the OCPA includes an "unfair or deceptive trade practice as defined in Section 752[.]" 15 Okla. Stat.

---

[7] At the conclusion of his one-paragraph argument, Mr. Dunham asserts Mr. "Mak's claim for *conversion* should be dismissed." *Id.* at 9 (emphasis added).

9

§ 753(21). Section 752 defines a deceptive trade practice as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person" and further states that "[s]uch a practice may occur before, during or after a consumer transaction is entered into and may be written or oral[.]" *Id.* § 752(13). The OCPA defines a "consumer transaction" as "the advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented[.]" 15 Okla. Stat. § 752(2).

Mr. Dunham first argues that his alleged misrepresentation (i.e., that all $DEPO tokens would be swapped for $ARC tokens) does not fall within the scope of a "consumer transaction" because it does not involve "a sale, purchase, or distribution of any type of property." Mot. [Doc. No. 9] at 10. As Mr. Mak points out, however, the OCPA defines a "consumer transaction" very broadly to include the "distribution" of intangible property or "any other article, commodity, or thing of value wherever located, for purposes that are . . . business oriented[.]" 15 Okla. Stat. § 752(2). There is no doubt that the cryptocurrency tokens were, at a minimum, a "thing of value" that Mr. Dunham distributed for a business oriented purpose, and he cites no authority to the contrary.[8]

---

[8] Although not adequately developed in Mr. Dunham's argument, the Court further notes that the OCPA's definition of a deceptive trade practice includes a misrepresentation "after a consumer transaction." *Id.* § 752(13). So even if the token swap itself did not qualify as a "consumer transaction," Mr. Mak would still have stated a claim for a misrepresentation after the sale of the $DEPO tokens.

Mr. Dunham next argues that Mr. Mak did not sufficiently plead facts to show he was deceived by or relied upon the alleged misrepresentation regarding the token swap from $DEPO to $ARC. Mot. [Doc. No. 9] at 10. But the OCPA simply requires that the subject misrepresentation "has deceived or *could reasonably be expected* to deceive or mislead a person. . ." 15 Okla. Stat. § 752(13). Accordingly, Mr. Dunham's argument that Mr. Mak must allege an act or omission in reliance upon the misrepresentation goes beyond what the plain language of the OCPA requires. *See Hampton v. Gen. Motors LLC*, No. 21-CV-250-RAW, 2024 WL 2180102, at *10 (E.D. Okla. May 13, 2024), *report and recommendation adopted*, No. CIV-21-250-RAW, 2024 WL 4307185 (E.D. Okla. Sept. 26, 2024) ("[T]he OCPA does not have as an element the requirement of reliance, much less justifiable reliance."). The alleged misrepresentation by Mr. Dunham "could reasonably be expected" to deceive Mr. Mak into believing his $DEPO tokens would be swapped for $ARC tokens, and that is sufficient for Mr. Mak's OCPA claim.[9] For all these reasons, the Court finds Mr. Dunham's arguments for dismissal of the OCPA claim are without merit, and Mr. Mak has stated a plausible claim for relief.

---

[9] Finally, the parties dispute whether Mr. Mak was required to plead the misrepresentation involved in his OCPA claim with particularity under Federal Rule of Civil Procedure 9(b). *Compare* Mot. [Doc. No. 9] at 11; *with* Resp. [Doc. No. 20] at 11-12. But the Court need not definitively decide whether Rule 9(b) applies because Mr. Mak's allegations are sufficient under either standard: in addition to pleading all the relevant facts regarding misrepresentation, Mr. Mak attaches the March 8, 2022 letter containing the alleged misrepresentation regarding the token swap. *See* [Doc. No. 1-3]; *see also* [Doc. No. 20] at 12-13.

## IV. Conclusion

IT IS THEREFORE ORDERED that Mr. Dunham's Motion to Dismiss [Doc. No. 9] is GRANTED IN PART and DENIED IN PART as set forth above.

IT IS SO ORDERED this 23rd day of July, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE